**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dalton-Ross Homes, Inc., ) | No. CV-06-1301-PCT-FJM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Daryl J. Williams, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Dalton-Ross Homes, Inc. filed this action under the Copyright Act, 17 U.S.C. §§ 101 et seq., claiming that defendants infringed a copyright it holds on architectural floor plans. Plaintiff also asserts state law claims of breach of contract, unfair competition, conversion, and intentional interference with business expectancy. The court has before it defendants' motion for summary judgment (doc. 74), plaintiff's response (doc. 92), and defendants' reply (doc. 97). For the following reasons, we grant defendants' motion for summary judgment (doc. 74).

**I**

Defendants Daryl Williams and Cynthia Hadden are officers and directors of defendant WW Homes, Inc., an entity previously in the business of constructing and selling single-family homes in Lake Havasu City, Arizona. WW Homes built several different

1  models of homes, including the Villa del Mesa model–a three bedroom, two bath, split floor
2  plan ("VDM plan").

3  On January 3, 2000, WW Homes entered into a license agreement with Gregg and
4  Karen Noel, assigning all of its rights, title, and interest in the VDM plan to the Noels in
5  exchange for a payment by the Noels of $2,000 for each residence constructed using the
6  VDM plan. Shortly thereafter, the Noels formed a corporation known as Dalton-Ross
7  Homes, Inc., plaintiff in this case. On May 9, 2003, WW Homes registered the VDM floor
8  plan with the United States Copyright Office, and on December 3, 2003, licensed the
9  copyright to Dalton-Ross.

10  In 2000, Dalton-Ross entered into a contract with George and Chris Link for the
11  construction of a residential home (the "Link plan"). Draftsman Sam Brindis was hired to
12  draft plans for the home. Using a computer-aided drafting software program, Brindis used
13  the original VDM plan as a base and edited that plan according to the specific needs of the
14  Links. Dalton-Ross paid WW Homes the $2,000 royalty payment as required under the
15  license agreement. In early 2002, Dalton-Ross constructed a home for Brian and Silvia
16  Conway (the "Conway plan"). Again, Sam Brindis was engaged to draft plans for the home.
17  A dispute exists as to whether Brindis drafted the Conway plan using the VDM or Link plan
18  as a base, or whether he used original sketches as a starting point.

19  In January 2005, defendant Daryl Williams, through WW Homes, hired Brindis to
20  prepare plans for a spec house to be constructed on Latrobe Drive (the "Latrobe Home").
21  The Latrobe Home is the subject of the instant copyright action. Defendants acknowledge
22  that they based the Latrobe Home design largely on the Conway plan. Plaintiff alleges that
23  defendants' unauthorized use of the Conway plan in the design of the Latrobe Home violated
24  its exclusive rights under the Copyright Act.

## II

26  Under the Copyright Act, an "architectural work" is statutorily defined as "the design
27  of a building as embodied in any tangible medium of expression, including a building,
28  architectural plans, or drawings," and "includes the overall form as well as the arrangement

1 and composition of spaces and elements in the design, but does not include individual
2 standard features," 17 U.S.C. § 101, such as "common windows, doors, and other staple
3 building components," H.R. Rep. No. 101-735, at 6949 (1990).

4       To prove copyright infringement, a plaintiff must show (1) ownership of a valid
5 copyright, and (2) copying by the defendant of protected elements of the copyrighted work.
6 Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994). Copying may
7 be established by showing that the defendant had access to plaintiff's work and that the two
8 works are "substantially similar." Id.

9       It is undisputed that Dalton-Ross holds a valid copyright to the VDM plan and that
10 defendants had access to that plan. Moreover, defendants acknowledge that they "copied"
11 the Conway plan in designing the Latrobe Home. The dispute between the parties lies in
12 whether Dalton-Ross has a protectable copyright interest in the Conway plan. Dalton-Ross
13 argues on the one hand that the Conway plan is a derivative of the VDM plan and that
14 defendants' unauthorized use of the Conway plan constitutes infringement. Defendants
15 contend that the Conway plan is their own original design, based largely on defendant Daryl
16 Williams' own house plans, DSOF ¶¶ 32-35, and that they merely incorporated generic
17 elements from the VDM plan into the Conway design. They claim that because the Conway
18 plan is not a derivative of the VDM plan, it is not entitled to protection.

19       A derivative work is defined as "a work based upon one or more preexisting works,"
20 which consists of "editorial revisions, annotations, elaborations, or other modifications
21 which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. A work is
22 not derivative unless it "incorporate[s] in some form a portion of the copyrighted work."
23 Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984). The owner of a copyright has
24 the exclusive right "to prepare derivative works based upon the copyrighted work." 17
25 U.S.C. § 106(2). One who reproduces a derivative work without the authorization of the
26 preexisting work's registered owner "violates . . . the exclusive rights of the copyright owner
27 as provided by [section 106(2)] . . . [and] is an infringer of the copyright." Id. at § 501(a).
28       Dalton-Ross' infringement claim, premised on defendants' copying of the Conway

- 3 -

1  plan, an unregistered derivative,[1] raises an important jurisdictional issue. The owner of an
2  exclusive right under a copyright, including the right to prepare derivative works, "is entitled,
3  *subject to the requirements of section 411*, to institute an action for any infringement of that
4  particular right." Id. at § 501(b) (emphasis added). Section 411(a) provides that "no action
5  for infringement . . . shall be instituted until preregistration or registration of the copyright
6  claim has been made." This registration requirement is a jurisdictional prerequisite to the
7  right of the holder to enforce the copyright in federal court. Perfect 10, Inc. v. Amazon.com,
8  Inc., 487 F.3d 701, 710 n.1 (9th Cir. 2007); Murray Hill Publ'ns, Inc. v. ABC
9  Communications, Inc., 264 F.3d 622, 630 (6th Cir. 2001).

10  The registration requirement in § 411(a) makes no distinction between derivative and
11  original works. Whether a separate registration of a derivative work is a prerequisite to an
12  action for infringement of that derivative work is a question of first impression in this circuit.
13  However, we are persuaded that separate registration of the derivative work is required. See
14  Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 354 F.3d 112, 115 (2d Cir. 2003)
15  ("registration of a claim on an original work does not create subject matter jurisdiction with
16  respect to a suit for infringement of the original's unregistered derivative"); Murray Hill, 264
17  F.3d at 632 (6th Cir.) ("before an infringement suit can be sustained based on the derivative
18  work, that derivative work must be registered"); Montgomery v. Noga, 168 F.3d 1282, 1292
19  (11th Cir. 1999); Creations Unlimited, Inc. v. McCain, 112 F.3d 814, 816 (5th Cir. 1997);
20  cf. Litchfield, 736 F.2d at 1357 ("[t]o constitute a violation of section 106(2) the infringing
21  work must incorporate in some form a portion of the copyrighted work"). These multi-circuit
22  authorities, coupled with a plain reading of section 501(b) in conjunction with section 411(a),
23  indicate that in order to file an action for infringement of a derivative work, the plaintiff must
24  first register the copyright of that derivative work.

---

[1] The parties dispute whether the Conway plan is a "derivative" of the VDM plan as that term is defined in the Copyright Act. We assume, without deciding, for purposes of the present motion that the Conway plan is a derivative of the VDM plan.

      Nevertheless, copying an unregistered derivative may give rise to liability based upon copyright registration of the underlying original work contained in the derivative. See, e.g., Lifetime Homes, Inc. v. Walker Homes, Inc., 485 F. Supp. 2d 1314, 1321 (M.D. Fla. 2007); 2 Nimmer on Copyright § 7.16[B][2][b] (concluding that the owner of a registered underlying work that is part of an unregistered derivative work should be able to maintain a copyright infringement action against a defendant who reproduces the derivative work–and thus the underlying work contained therein); cf. Russell v. Price, 612 F.2d 1123, 1128 (9th Cir. 1979) ("[t]he established doctrine prevents unauthorized copying or other infringing use of the underlying work or any part of that work contained in the derivative product so long as the underlying work itself remains copyrighted"). In Montgomery, 168 F.3d at 1292-93, the court concluded that it had jurisdiction over an infringement action based on an unregistered derivative, where the derivative incorporated significant protectable elements of a registered original work. The court held that by copying the unregistered derivative, the defendants infringed original elements of the underlying registered work.

      Therefore, in order to successfully assert an infringement claim based on the unregistered Conway plan, Dalton-Ross must show that in copying the Conway plan, defendants also copied protectable elements of the registered VDM plan. Dalton-Ross, however, does not argue that the Latrobe plan incorporated original, protectable elements of the VDM plan. Instead, it simply argues that the Latrobe plan is a derivative of the Conway plan, which in turn is a derivative of the Link plan, which in turn is a derivative of the Halterman plan, which in turn is a derivative of the registered VDM copyright. Plaintiff's Response at 1-2. This is insufficient to establish infringement of the VDM copyright.

      To prove that the Latrobe plan infringes the VDM copyright, plaintiff must show copying by the defendants of protected elements of the VDM plan. See Apple Computer, 35 F.3d at 1442. In other words, plaintiff must show that the Latrobe and VDM plans are "substantially similar," which requires "a detailed comparison of the allegedly infringing and infringed works." Litchfield, 736 F.2d at 1356.

Because only protected elements of a work can be compared when deciding substantial similarity, analytic dissection of the work is appropriate to determine "the scope of copyright protection before works are considered 'as a whole.' " Apple Computer, 35 F.3d at 1443. Features that are "as a practical matter indispensable, *or at least standard*, in the treatment of a given idea" are not protected by copyright. Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763, 765-66 (9th Cir. 2003) (emphasis added). "When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity." Apple Computers, 35 F.3d at 1439.

Our comparison of the Latrobe and VDM plans reveals very little similarity. The locations of the dining rooms and kitchens are different. The Latrobe plan does not include a breakfast nook. The Latrobe's second bedroom has a sitting room, walk-in closet, and its own bathroom, none of which are present in the VDM plan. The configuration of the Latrobe master bedroom and bath is drastically different from that of the VDM plan. The Latrobe master bedroom has a larger, differently shaped sitting area. Its master bath is larger, has a tub, and a large walk-in closet. The layout of the two living rooms is also different. The VDM plan has a fireplace in the corner, while the Latrobe plan has a wet bar and a fireplace in the middle of a wall. In sum, the distinguishing features of the VDM and Latrobe floor plans, namely the size, type, and arrangement of rooms; the placement of various components within each room; as well as the "expression of the VDM plans, taken as a whole," Plaintiff's Response at 14, are vastly different. [2] After viewing the evidence in the light most favorable to Dalton-Ross, we conclude that no fact finder could reasonably find

---

[2] Dalton-Ross argues that the derivative nature of the Conway plan is established by circumstantial evidence such as the Conway home construction proposal, which calculated the cost of the Conway home by adjusting the "Base Price for Villa del Mesa w/ 3-Car Garage," and the building construction contract, which describes the Conway Home as a "Customized Villa del Mesa." This evidence, however, is not probative of whether the Conway plan is a derivative of the VDM plan, or whether the Latrobe plan infringed the VDM plan. Rather, "to prove infringement, one must show substantial similarity." Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984). This is accomplished with a "detailed comparison of the allegedly infringing and infringed works." Id. at 1356.

substantial similarity between the Latrobe and VDM plans. See Berkic v. Crichton, 761 F.2d 1289, 1292 (9th Cir. 1985). Therefore, no infringement of the VDM copyright has occurred.

### III

Dalton-Ross also asserts state law claims for breach of contract, unfair competition, conversion, and interference with business expectancy. The Copyright Act specifically preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). The rights protected under the Act include the rights of reproduction and preparation of derivative works. Id. at § 106(1), (2). If a state law claim includes an "extra element" that makes the right asserted qualitatively different from those protected under the Act, the state law claim is not preempted. Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005). Dalton-Ross alleges no "extra element" with respect to any of the state law claims that serves to "transform the nature of the action." Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006). Instead, each of Dalton-Ross' state law claims is premised on the alleged unlawful copying of the VDM plan or its derivatives. See Complaint ¶¶ 58, 61, 65, 71. Because the state law claims primarily concern the subject matter of copyright, they are preempted by the Copyright Act.

### IV

Therefore, **IT IS ORDERED GRANTING** defendants' motion for summary judgment (doc. 74). The clerk shall enter final judgment.

DATED this 29th day of August, 2007.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge